SHAWANNA L. JOHNSON, ESQ.
Nevada Bar No.: 12791
Law Offices of Shawanna L. Johnson
3311 S. Rainbow Blvd., Suite 144
Las Vegas, NV 89146
Tel: 702-755-6949
Fax: 702-294-2229
sjohnson@sljlaw702.com
*Attorney for Plaintiff Stephanie Santoro*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>LEO HAROLD SANTORO,<br><br>              Debtor.<br><br>STEPHANIE SANTORO,<br><br>              Objector,<br><br>vs.<br><br>LEO HAROLD SANTORO<br><br>              Debtor. | Chapter 13<br><br>Bankruptcy: 23-14371-nmc<br><br>Adversary Proceeding: 24-01004-nmc<br><br>**AMENDED COMPLAINT** |

COMES NOW, Creditor/Objector STEPHANIE SANTORO ("Objector" or "Stephanie"), by and through her attorney Shawanna L. Johnson, Esq., hereby files this Amended Complaint, pursuant to 11 U.S.C. §523(a)(2)(A) and (a)(5), seeking an order determining that the debt owed to her from Leo Santoro ("Debtor" or "Leo") is non-dischargeable. In support, Ms. Santoro avers as follows:

**PARTIES**

1. Stephanie Santoro is an individual citizen of the State of Nevada. She is the ex-wife of the Debtor.

2. Leo Harold Santoro is the Debtor in this case, and is represented by Troy Fox, Esq., of the law firm Fox, Imes & Crosby.

1

**JURISIDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1408(a), as Nevada is the state in which the Debtor resides.

**GENERAL ALLEGATIONS**

5. This Adversary Proceeding relates to Chapter 7 case *In Re Leo Harold Santoro*, BK-23-14371-nmc, now pending in this Court (the "Bankruptcy Case"). Plaintiff is a creditor and is entitled to $52,000.00 pursuant to a Decree of Divorce entered in the Eighth Judicial District Court, Family Division, on August 15, 2023, styled: *Leo Santoro v. Stephanie Santoro*, D-23-666886-D.

6. Stephanie and Leo were divorced by Stipulated Decree of Divorce entered on August 15, 2023.

7. Both parties were represented by counsel in the divorce: Leo was represented by David R. Jacks, Esq., of The Jacks Law Group, and Stephanie was represented by Robert Blau, Esq. of 702-DIVORCE.

8. The Parties negotiated and came to an agreement by early May 2023. In reaching the agreement, the parties themselves engaged in discussions and understandings by text message and email, whereby they were able to agree to several terms which were then passed on to their respective attorneys.

9. During their marriage, Stephanie worked for Signature Air Conditioning and Heating ("Signature" or the "Company"), as a marketing and advertising manager. Leo is the manager/de-facto owner/investor of the Company.

10. Leo paid Stephanie $2,000.00 per week for her work. She worked for another company and left that company in June 2022 to work for Signature.

2

11. However, when Leo filed for divorce in April 2023, he had essentially kicked her out of the Company and cut her off from all Company matters, and eliminated her employment.

12. Stephanie had to find other work, as she had no other income and Leo did not pay her any spousal support.

13. Leo admitted to Stephanie that he terminated her because he was angry, and not for cause. Feeling momentarily guilty about his actions, in their verbal and written discussions leading up to finalizing the divorce, Leo promised to pay Stephanie back for money she lost when he cut her off without support.

14. The Parties began emailing their attorneys on or around May 4, 2023, concerning the timing and amount of the payments. Stephanie sent a message to Leo on May 4, 2023 at 9:09 am with their agreement, stating (in relevant part): "Leo and signature air will pay stephanie weekly $2,000.00 for 6 months starting 5/12/23."

15. Leo forwarded the message to his attorneys that same morning, May 4, 2023 at 11:55 am, to David Jacks, Esq., that: "Here is what me and Steph agreed upon."

16. Leo's Counsel Mr. Jacks confirmed receipt of the agreed-upon terms the following morning on May 5, 2023 at 10:22 am, and asked Leo which attorney would be drafting the Decree.

17. Hence, the Parties very well understood that Leo would be paying Stephanie as part of the divorce negotiations. It was not for back wages because there were technically no unpaid wages when he terminated her without warning. It was to make up for the fact that he left his wife in a financial lurch when he filed for divorce and angrily terminated her employment.

18. Stephanie agreed to the $52,000.00 as a full and final settlement of all her claims, and to waive her right to trial.

19. The actual Decree took some time to get signed and filed; but it was finally entered on August 15, 2023. The payment agreement was put into the Decree, with Leo being ordered to pay Stephanie $2,000.00 per week, for 26 weeks, commencing May 19, 2023 until complete. (Decree, p. 2/13). This amount was labeled as an "Interest Free Reimbursement for a Loan

exchanged between the parties and bargained-for equalization of all property and debt rights and obligations above."

20. The Parties had no property or debts together, and given the short-term marriage of less than 2 years, they had not engaged in any actual loan transactions either.

21. However, Leo insisted on using this language in the Decree. It is clear that Leo had either sought legal counsel on this specific provision, or had researched it on his own; so he was well aware of the intended legal consequence.

22. At the time, Stephanie did not know Leo's ultimate plan or the legal significance of this label on her ability to collect her payments.

23. However, after agreement was reached, but before the ink was even dry on the Decree, Leo began sending Stephanie taunting messages that he intended to file for bankruptcy, and she would get nothing.

24. For example, on May 19, 2023, the day he was supposed to begin the payments, Leo wrote to Stephanie at 4:56 pm: "Not paying you 2000 a week go ahead do what you need to do."

25. Further, on May 23, 2023, four (4) days after he was to begin paying her, Leo sent Stephanie a barrage of menacing emails to Stephanie in rapid succession:

   a. 7:54 pm, Leo wrote to Stephanie: "Race comes at me he's gonna really good beat down and I'm paying shit so sue me."

   b. 7:56 pm, Leo wrote to Stephanie: "With u called it a loan I'll fill [sic] BK be done with you. Have a nice life idiot."

   c. 8:02 pm, Leo wrote to Stephanie: "Ur ego fuck that up. Not paying for shit I'm over you and ur fucking attitude. Do what ever u want never see a dollar from me again."

   d. 9:06 pm, Leo wrote to Stephanie: " I made sure it's a loan I'll default and go fuck ur self."

26. The messages continued the next day on May 24, 2023:

a. 5:47 am: Leo wrote to Stephanie: "You will break out divorce paperwork. Of you break the agreement I can buy everything 10 times if you want to go that route?"

27. By August 15, 2023, Leo continued to taunt Stephanie,

a. 5:58 pm Leo sent Stephanie an email subject line/header stating: "The money I'll save for not paying alimony. I can buy all new."

b. 6:13 pm: Leo wrote to Stephanie: "You fucked this one up pretty good I was going to pay your car payment for next 30 months, I couldn't convince my mom to pay that, but that's not gonna get paid now I'm on unemployment there no judge in the world going to allow that. Good luck. I don't want you. I think you're kind of a selfish evil, cheater, liar, scammer person. I get it I love you it's gonna be hard but I'll meet somebody who's not a liar/ cheater. Hence why we're getting divorced. And if you want to try to press charges on me for some fucking video, you said I sent fucking have fun."

c. 6:27 pm: Leo wrote to Stephanie: "Have a blessed night. You are ur you [sic] worst enemy. Your actions cost you a lot of money last week."

d. 6:29 pm: Leo wrote to Stephanie: "Thanks for saving me 40,000 dollars."

e. 6:32 pm: Leo wrote to Stephanie: "Absolutely I'm just excited about what you do today. Save me a lot of money in the future."

28. Further, on November 15, 2023, Leo continued the messages, writing to Stephanie at 12:16 am: "My next court appearance. You're gonna have. I'm gonna make sure you pay my lawyer fees on this one. I'm not done with you. i'm never giving up, so I feel satisfied. You should've thought of that before you fucked around on me with three different dudes."

29. Further, on December 9, 2023, Leo wrote to Stephanie: "I changed my BK from chapter 7 to 13 so I don't owe you shit!!! I need my gun! U stole enough and you're going to jail what u did. I can't wait to see you in handcuffs"

5

30. Finally, on December 14, 2023, at 5:51 pm, Leo wrote to Stephanie: "You lost alot battles you lost your restraining order you lost your alimony case I filed chapter -13 so you will never see a dime!!! my BK court wants the 87000 u stole. Amex had 11 felony charges coming down on ya . Just give me back my gun u thieve?!!!"

31. All of these messages (broken language and cursing including) show the extreme depravity of Leo's actions and his utter intention to defeat Stephanie's entitlement to anything he agreed to pay her merely months ago.

32. Beginning on the day the payments were to start, and continuing through to the filing of this case, Leo has made a total farce of the legal system and has done everything to ensure that he carried out his plan. He never intended to pay her according to the domestic decree, and he admits he purposely structured the settlement as a loan because he intended to file for bankruptcy and give her nothing.

33. These messages are more than simply an ex-husband trying to taunt or vent to his ex-wife. Leo was not joking or just "blowing off steam." These are serious threats and proof that Leo thought he was slick and smarter than everyone else by structuring his divorce settlement with the exact intention of never complying with it.

34. He started sending the messages directly after the parties met and conferred and came to agreements between themselves and their attorneys. It was binding in May 2023. However, it was not until the Decree was entered in August 2023 when Stephanie legally could enforce the Decree/agreement for her benefit.

35. Leo sent the messages to leave Stephanie on the hook to wonder whether he would pay or not. His actions followed in line with his threats not to pay.

36. This is the ultimate indicia of fraud in the inducement, common law fraud, and fraud upon the Court system. Stephanie negotiated her divorce in good faith with the intent to be bound. Leo negotiated with the intent to induce her into finalizing the Decree and waiving a trial on the merits.

37. Accordingly, the $52,000.00 obligation that Leo owes to Stephanie is not dischargeable in his bankruptcy. The obligation was procured by fraud because Leo knew at the time he negotiated the settlement that he had no intention of paying Stephanie.

38. His immediate actions confirm as much, with him stating in writing that he essentially tricked Stephanie into taking a loan/equalization payment because he was going to file for bankruptcy anyway.

39. Stephanie reasonably believed that despite the threats, Leo would eventually comply or that she could obtain enforcement of the Decree in any instance.

40. Stephanie is therefore entitled to an order that Leo's debt to her is non-dischargeable.

41. In addition to defrauding her, Leo's debt to Stephanie is also not dischargeable because it is an obligation of support as part of a domestic relations order.

42. The debt relates to Leo's (husband) obligation to support Stephanie (wife) through the date of divorce. Leo was Stephanie's source of money for her daily needs. When he filed for divorce and took away her employment and money, he still had a legal duty to support her as his wife.

43. Leo made more money than Stephanie. Stephanie relied on the money she was getting from Leo to meet her needs. When he filed for divorce, and took the unilateral step to terminate her employment, he created a financial bind for her. He was obligated from a marital perspective to support her

44. Therefore, when Leo made the offer to resolve the divorce by giving her the $52,000.00, it was at a time when Leo knew Stephanie needed the money, and that he had a legal monetary obligation to her.

45. Although it is now clear why Leo insisted on labeling the payment as a loan and/or property equalization (i.e., to make the debt dischargeable in bankruptcy), Stephanie did not know that the label on the promise to pay would affect her ability to enforce her Decree.

46. However, regardless of the label, the fact that the agreement/obligation arises from a domestic proceeding and was intended to make Stephanie whole and to support her for interrupting her income, the $52,000.00 obligation is properly considered a domestic relations order that is non-dischargeable.

47. It has been necessary for Stephanie to retain the services of the undersigned to file this Amended Complaint. She should be entitled to recoup all of her damages, including attorney's fees and costs, and any punitive damages where available.

### FIRST CLAIM FOR RELIEF
(Non-Dischargeability based on Fraud, Misrepresentation, and False Pretenses)

48. Stephanie repeats and realleges for foregoing allegations as though fully set forth herein.

49. 11 U.S.C. §523(a)(2)(A) contains the exemptions from discharge of a debt from a bankruptcy proceeding for fraud, fraudulent misrepresentation, or false pretenses.

50. This debt is not dischargeable because it was clearly procured by fraud. Leo admits in writing in multiple messages that he conned Stephanie into agreeing to list his payment as a "property equalization payment" and/or a "loan" so that he could immediately file for bankruptcy to prevent her from getting anything.

51. His exact words on May 23, 2023, after the settlement was reached but before the Decree was entered, confirms his plan to "fill [sic] BK be done with you. Have a nice life idiot" and "I made sure it's a loan I'll default and go fuck ur self."

52. It is clear that Leo never intended to pay Stephanie pursuant to the settlement.

53. Leo's formed the intent not to pay even before he officially began negotiations with Stephanie in April 2023. Therefore, when he entered the settlement, he knew he had no intention of complying with it.

54. Leo carried out his plan and has not paid Stephanie a dime of what she is entitled to receive. He instead turned to the Bankruptcy Court to get out of his agreement.

55. Stephanie acted reasonably in relying on Leo's promise, as she knew that legally she could at least enforce Leo's obligation to pay her in Family Court.

8

56. By the time her claim for non-payment materialized, however, Leo had filed for bankruptcy.

57. Hence, Stephanie's right to go to Family Court for contempt, sanctions, punitive damages, and for enforcement, was cut off by Leo's bankruptcy filing and the automatic stay.

58. Accordingly, all the elements of fraud, fraudulent inducement, and false pretenses are met.

59. This Court is Stephanie's only mechanism to be paid from Leo as part of negotiating in good faith and giving up her rights and claims during the divorce case.

60. Stephanie is entitled to her attorney's fees and costs incurred in bringing this action, and to any punitive damages the Court may award as a result of Leo abusing the bankruptcy process simply to defeat his ex-wife's domestic claims.

**SECOND CLAIM FOR RELIEF**
**(Non-Dischargeability of Domestic Support Order)**

61. Stephanie repeats and realleges for foregoing allegations as though fully set forth herein.

62. 11 U.S.C. §523(a)(5) contains the exemptions from discharge of a debt for a domestic relations/support order.

63. The money that Leo agreed to pay Stephanie by Stipulated Decree is a domestic relations support obligation. The debt originates from a Family Court Domestic Proceeding (a divorce) and was reduced to a final order of support in the form of $2,000.00 per week for 26 weeks.

64. The Parties negotiated and agreed for Leo to pay this money to make Stephanie whole for not supporting her when he filed for divorce, and to make up for the fact that he terminated her without cause, thereby leaving her in financial limbo and needing money.

65. Leo insisted on using the label "property equalization/loan" under false pretenses. He knew there was no property to equalize and that Stephanie did not loan him money.

66. On the contrary, Leo made clear that he was trying to label the payment in a way to make it dischargeable in bankruptcy. He confirmed as much in his text to Stephanie on May

9

23, 2023 when he taunted her for agreeing to the label on the payment, and when he admitted that he intended to file for bankruptcy so she would receive nothing.

67. Despite his efforts, Leo's label on the payment does not negate the fact that it was a payment from him (husband) to Stephanie (wife) to account for money he owed her to support her during marriage and to financially support her when he terminated her.

68. Therefore, the debt which is encompassed within the Decree of Divorce represents a domestic relations order, and it is not dischargeable. Stephanie is entitled to collect the full amount as a priority creditor.

69. Stephanie is entitled to her attorney's fees and costs incurred in bringing this action, and to any punitive damages the Court may award as a result of Leo abusing the bankruptcy procedure and process simply to defeat his ex-wife's domestic claims.

Stephanie reserves the right to amend her Amended Complaint as the case proceeds.

WHEREFORE, Creditor/Plaintiff Stephanie Santoro respectfully prays as follows:

1. For an Order that the $52,000.00 that Leo owes her is non-dischargeable as a domestic relations order;
2. For an order that the $52,000.00 that Leo owes her is non-dischargeable as it was procured by fraud;
3. That the Court award punitive damages for Leo's conduct, where available; and
4. That she be awarded her attorney's fees and costs incurred in this action;
5. For all other relief the Court deems just and appropriate.

Dated this 4th day of June, 2024.

Respectfully Submitted,

/s/ Shawanna L. Johnson
SHAWANNA L. JOHNSON, ESQ.
Nevada Bar No.: 12791
Law Offices of Shawanna L. Johnson, Esq.
3311 S. Rainbow Blvd., Suite 144
Las Vegas, NV 89146
*Attorney for Stephanie Santoro*

**VERIFICATION**

Under penalties of perjury, I declare that I am the Plaintiff/Creditor in the above-titled action, that I have read the foregoing Amended Adversary Complaint, and know the contents thereof; that the pleading is true to the best of my knowledge, except for those matters contained therein which are stated upon information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 4th day of June, 2024.

/s/ Stephanie Santoro (with permission)
STEPHANIE SANTORO

11

## CERTIFICATE OF SERVICE

I hereby certify that I am an individual over the age of 18 years; that service of the foregoing **AMENDED COMPLAINT,** was made on the 4th day of June, 2024, by e-filing through the ECF system, and via e-service, to:

Troy Fox
Fox, Imes & Crosby
601 S. 10th St. Suite 202
Las Vegas, NV 89101
*Debtor's Adversary Counsel*

Seth Ballstaedt, Esq.
9555 S. Eastern Avenue, Suite 285
Las Vegas, NV 89123
*Debtor's Bankruptcy Counsel*

Rick A. Yarnall
701 Bridger Avenue, #820
Las Vegas, NV 89101
*Trustee*

/s/ Shawanna L. Johnson
Plaintiff's Counsel

12